Good morning. May it please the Court. I'm Gary Martz. I'm here for the appellant, Gencap Insurance Services. For the sake of simplicity, I'm going to refer to my client as MJ Kelly, because that was the name it was known by in the underlying litigation. This case is an appeal from a dismissal on the pleadings in the district court of a complaint-seeking contribution. MJ Kelly paid $5 million in settlement of claims against Heritage Hospitality, the owner of a motel in Monroe County, Arkansas, had asserted against MJ Kelly, against the defendant in this case, Napoli, Toni Frazier Insurance Agency, and Pinstore Insurance. When MJ Kelly paid that $5 million, it agreed to settle the claims against Toni Frazier in addition to the claims against MJ Kelly and Pinstore, even though Toni Frazier did not contribute to that settlement. The idea was to then seek contribution for Toni Frazier's fair share of that $5 million settlement payment. The district court dismissed the complaint based upon collateral estoppel. It did that by giving preclusive effect to two different orders that were entered in the underlying state court litigation, two different underlying interlocutory orders of the state court. One of those orders was an order that granted MJ Kelly summary judgment on Heritage's claims based upon a finding, or a conclusion of law actually, that MJ Kelly owed Heritage no duty. Piggybacking on that order, the state court then dismissed Toni Frazier's contribution claim against MJ Kelly based upon that finding, finding that because MJ Kelly had been dismissed from Heritage's claims, Toni Frazier could not proceed with the contribution claim. That did not end the state court litigation. The state court litigation proceeded because Heritage's claims against Toni Frazier and against Pinstore continued. At that point, Heritage tried to appeal the summary judgment for MJ Kelly. That was dismissed for lack of an appealable order. It wasn't a final judgment. They didn't get a 54B certificate. There wasn't anything that made it appealable, so that was dismissed. The result of that was that MJ Kelly was sort of left hanging out there. It had been dismissed from the case, but the case was proceeding. It had a summary judgment that was not a final order, but it still faced the possibility of liability because certainly at some point in the litigation when it concluded, whether that was at some later point on dispositive motions filed by the remaining defendants or if that case went to trial and there was a judgment, it was going to face an appeal from Heritage. The possibility of that appeal and the possibility of that order not holding up on appeal and the case being remanded and tried left MJ Kelly at some risk, so MJ Kelly settled the case. The district court erred in two ways when it found that collateral estoppel precluded MJ Kelly's contribution claims. The first was that both of these orders are interlocutory orders. They're not final judgments of the sort that are required to trigger collateral estoppel because that's the standard under Arkansas law for collateral estoppel. There have to be issues. Let me ask you, counsel.  I think the district court applied a case called Pinson. Yes, sir. In this case on the ground that no appeal is required to make an order final. Is that correct? That is. But I think there's a case, I think it's Shaw, which may be of relevance here. I'm wondering if you could tell us why Pinson is not applicable and Shaw might be. So the John Cheesman trucking versus Pinson case, which is the case that the sort of final bottom line holding of Cheesman is that when a case proceeds to trial or to some form of a judgment that would be recognized as final, that is an appealable judgment, that the fact that that judgment is under appeal does not affect its finality for the purposes of race judicata, for collateral estoppel or for any other aspect of race judicata. So the problem with applying Cheesman to this case is that the facts here are just different. Cheesman had, essentially were two competing litigations in two different counties. One was in Pulaski County, the other was in Lono County. And both of these actions arose from the same accident, an automobile accident. They arise from the same accident and the Pulaski County case goes to trial, it proceeds through a judgment, and in that trial liability was determined for the defendant. It then goes over to Lono County and they then say, well this is a stop in this county because this has already been determined. And what the Arkansas Supreme Court held was that the fact that the appeal was pending did not make that not a final judgment for these purposes. So it was proper to apply collateral estoppel. Why is this case different? This case is different, Your Honor, because the underlying case here, these are not competing cases racing to court. These are successive cases in which there was the underlying case and then there's contribution sought in the second case. And I think the primary reason that they're different though is that there was not a final judgment in the underlying litigation here at the point at which the settlement was consummated, at the point at which the contribution claim accrued. I don't think there's any dispute, and it's certainly alleged in the complaint, that these summary judgment orders in the state court that were entered in 2020 were not appealable. They were not final judgments. They could not be challenged at that point. They were still, and in fact, I think it's the case too that under Arkansas procedure, they could have even been backed out at any time. The court could have reconsidered them. I think that's a point that the Shaw Court made. Precisely. That this order was subject to revision, and so it wasn't final. There are two finality notions at work here. One has to do with appeal. Right. And the other has to do with the finality of the judgment itself, sort of lingering around here. Yes, sir. And so this judgment was still subject to some sort of modification when it was essentially replaced by a settlement. That is correct. And it was not, you know, not only was there not an appeal pending, there wasn't even an appeal possible of those orders. Well, there was an order, there was a judgment entered, but it wasn't on the summary judgment order. It was just on the dismissal of the case. That is correct. And that order, Your Honor. It never did get final. Yes, Your Honor. And that is the case, that that is a final judgment. But that final judgment did not exist when the settlement was consummated. The settlement was consummated and payment was made. But that judgment, that there was no contribution claim, never became final because the whole thing got settled. That's correct. And so that. So it can never be final. No.  And, in fact, I mean, there's never been a point in this litigation in which that order ever, those orders ever became appealable because the case was settled. Forget about appealable. Yeah. Or final. Or far about in the trial court. Or final for the purposes of collateral estoppel. I don't mean to be flip. I mean. Yes, sir. It is. I don't mean to say forget about appealable. I think my point is a different one. That's all. But anyway. Well, so there was a final judgment dismissing the case after the settlement? Yes, Your Honor. And so I think. Did the prior orders merge into that one? I think that's correct. But I think. Then why doesn't that make it a final order? And I will. The reason why, Your Honor, is because I think what the court has to look at here is when the contribution claim accrued. The contribution claim accrued before that order was entered. The contribution claim accrued under Arkansas law when payment on the settlement was made. Payment on the settlement was made on December 7th, 2023. That order dismissing the case finally was not entered until January 2nd of 2024, about a month later. And the thing about it is, too, is that treating that January order dismissing the case as an order that extinguished the contribution claim effectively creates a sort of untenable situation in which a party settles the claim. The settlement, you know, the consideration for the settlement is the dismissal of the claims. But there's an easy fix to that. As part of the settlement, you ask the court to vacate the prior summary judgment. I think that would probably solve that problem, Your Honor. I don't think there's any law that requires that or says that. I beg to differ. I mean, following Judge Colleton's point, I think that it became final when it was dismissed. And now it's simply precluded. I think that applying collateral estoppel that strictly creates a situation in which the very act that is required by the settlement agreement that is necessary to have a contribution claim simultaneously extinguishes the contribution claim. But I think even so, beyond that, there's also an issue as to whether these issues were actually litigated. And that's a separate consideration of the collateral estoppel standard applied in Arkansas. Well, I'm assuming that when the state court granted summary judgment to Kelly on Heritage's claim, that there was paper back and forth, argument back and forth? Oh, there was. Yes, there was. So why isn't that actually litigated then? It wasn't actually litigated because those were different issues from the ones that arose later on in the case. Those orders were entered into. Well, but the duty issue was litigated, right? The duty issue was litigated in those cases. That's the issue they're saying is preclusive. Yeah, that is correct. Although they didn't litigate the follow-on issues in those prior orders, they did litigate the duty question. They did litigate the duty question, but I think that there is case law, not in Arkansas but in other states, that does not apply estoppel in this situation to later arising facts. And the later arising fact here is the fact that these claims were settled. And that is a different consideration. And we have this situation in which there is now a settlement that is in place, and that gives rise to a new contribution claim. That contribution claim did not accrue until the settlement was paid. And so we have new facts. I think whatever would have happened because of that finding, and again, MJ Kelly faced an uncertain, they had that ruling in place, but their situation at which the case was settled was uncertain. They faced an appeal. They faced the possibility of a long trial. And they faced the possibility of a judgment exceeding the amount that they paid for settlement. It's a substantial amount of settlement. I think it's reflective of the fact that there was a substantial risk of liability. And the fact that this order was in place, and whether it was reasonable for MJ Kelly to settle the case under these circumstances, that's a question for a jury. It's not a question that ought to be decided through collateral estoppel or on the pleadings. Was it reasonable to settle the case when you had a summary judgment order in hand? That's something that should have been submitted to see for the jury to consider all of those facts. The fact that, yes, this order was in hand. Yes, there was a possibility of appeal. Yes, there was a possibility that that order might be reversed. And there was a possibility of having to be back in the trial court and having to litigate this case further. A case that by the time it was settled had been pending for seven and a half years and would have dragged on past a decade, I think, if that had been the case. MJ Kelly opted for settling the case and trying to get Frazier to pay its fair share through a contribution claim. But, again, that settlement did not occur until more than three years after those orders were entered. And the settlement changed things, and it changed things in a way that should not lead to application of collateral estoppel. Do you care to save any time for rebuttal? I'll save what I have. Thank you. Very well. Thank you for your argument. Mr. Stapina, we'll hear from you. Thank you, Mr. Chief Judge, and may it please the Court. My name is Joseph Stapina, and I, alongside my co-counsel, Todd Luton, have the privilege of representing Tony Frazier Insurance Agency in this litigation and as well in the state court litigation. This matter involves fundamental principles of the American judicial system. Once an issue has been decided, a party doesn't get to take a second bite at the apple because it now favors them to do so. The district court correctly applied the doctrine of issue preclusion and determined that MJ Kelly's claim is legally insufficient because it cannot be a joint tortfeasor under Arkansas law and dismissed the case, and this court should affirm the district court. Arkansas law provides a right of contribution to joint tortfeasors, but joint tortfeasor is defined by statute, and it must be two or more persons or entities who may be jointly or severally liable to the same person in tort for the same injury. And so MJ Kelly makes point in its reply brief to say some of our cases are old and there has been subsequent revisions to the law. But the addition of the word may be liable in tort is quite clearly conditionary, right? If a person cannot be liable in tort, they cannot be a joint tortfeasor under the statutory definition. And this court has held as such, and so has the Arkansas courts consistently. This court in Troutman v. Molden, again pre-revision, but the courts have said the same thing. There has to be a possible remedy in tort against the plaintiff has to have a viable remedy in tort against both the party seeking contribution and the party from whom contribution is sought. Now whether they win or not is a different issue, but there has to be a possible. So if two people go to trial and both parties lose, they can be joint tortfeasors. If two parties go to trial and one party wins and there's not a finding of liability, that party cannot be a joint tortfeasor under Arkansas law. And the same is true here, even though the determination was summarily and not via trial. When did that order become final? When the remaining orders, when the remaining claims were dismissed, under Arkansas law that order became final and preclusive. Say that again. When the remaining claims, when Heritage Hospitality's claims against Tony Frazier and Pinstar Insurance Company were dismissed, and Pinstar and Frazier's contribution claims against one another were dismissed, no remaining claims were left in the state court action. And that happened at what point in time? When the settlement was adopted? Is that what you're referring to? I think it was, I think the last order was entered in January, and I'll defer to my co- And is that because of the settlement? I don't think it matters. I'm just asking. Factually. Factually, yes. There were orders entered after a settlement agreement was, after the settlement was agreed to. Those are the orders you're referring to that you say resolved all the rest of the claims? Correct. And the reason I want to It's not important to find out. The reason I believe, you know, that it shows that the order is final, I want you to imagine a situation where MJ Kelly did not participate in these settlement negotiations. They did not contribute to a settlement. They were not released by release. No party would say that the plaintiff could then go refile their claims against MJ Kelly because that was an interlocutory order that was not owed preclusive effect. And so MJ Kelly has cited nothing. And there's nothing under Arkansas law that says a party who has a claim, or has an order saying they're not a tortfeasor, but who voluntarily chooses to participate in settlement negotiations, somehow becomes a joint tortfeasor for purposes of the Uniform Contribution Among Joint Tortfeasors Act. And in fact, in an Arkansas case, this is the exact opposite. And this is a case, I don't believe it's in either brief, and I can provide you the, it's SCALF, S-C-A-L-F, v. Payne, and that's 266-ARC-231-538-S.W.2D. So why don't you send us a letter if you think it's an important case? But basically it says the fact that he was willing to pay for a release from all claims, and language from the release, did not make him a tortfeasor. That's the same here. MJ Kelly chose to make a payment. That doesn't make him a tortfeasor under the law. A judge found that MJ Kelly could not be liable in tort. And MJ Kelly relied on that subsequently throughout the state court litigation. So your position is that when this final order was entered, that made the summary judgment order final? Correct. Why wouldn't it just be an order entered on a settlement? And the summary judgment order never became final. I think it goes back to the example I gave you. I'm sorry? I think it goes back to the example I gave you. If MJ Kelly was not a participant to the settlement, and the settlement proceeded and only Pinstar and Tony Frazier were later dismissed via settlement, none of us would say that that order wasn't final as to MJ Kelly. None of us would say there was no preclusive effect to that summary judgment order. And now one of us gets to relitigate against MJ Kelly saying that they're a joint tortfeasor. So this order, so that's how you distinguish a Shaw case? Correct. I noticed. I don't think you were. Did you make reference to that? I don't know if I did or not. I'd have to rest on the pleadings. Your hypothetical situation where you say MJ Kelly's not involved in the settlement. Correct. Are you saying that if that had happened, then MJ Kelly, when the settlement was implemented and the other claims dismissed, MJ Kelly could have appealed at that point the summary judgment order? Well, it was a prevailing party, so it couldn't have appealed. But the plaintiff could have appealed. Well, I got mixed up on those sides. It would have been an appealable order at that point.  And if Tony Frazier chose to file a contribution action against MJ Kelly saying we settled the claim, you weren't a party to the settlement, MJ Kelly could have said, but the summary judgment order is preclusive. It goes both ways. At that point, MJ Kelly could have rested on the summary judgment order and defended against a claim brought by Tony Frazier. It should also be bound by that order in this circumstance, and it shouldn't be allowed to bring its claim when Tony Frazier, in an opposite world, could not bring a claim, would be bound. That's not how preclusion works under our system. As I understand it, the district court relied on two possible bases, right?  The first one was the situation where summary judgment was granted to the defendant on the plaintiff's claims, and then the contributions fell as a result of that, right? Correct. Shouldn't those have been dismissed without prejudice, though? And therefore, isn't that a bad basis to have preclusion in this case? I think, assuming the summary judgment order against Tony Frazier's cross-claim should have been dismissed as moot, you still reach the same result because the summary judgment order granting MJ Kelly's summary judgment against the plaintiff's claims with the finding that it owed no duty and therefore could not. Okay, well that's the other basis. Right. Okay, I'm asking you if you agree with me that the first basis, the one I posited, was wrong. I don't think it matters, because ultimately the second basis gets us there. Okay, all right. And the district court rested on issue preclusion, but there are alternative bases for relief, and this court can affirm for any reason it chooses to. MJ Kelly's allegations set forth a well-pleaded claim for contribution. MJ Kelly pled that it did not owe a duty to Heritage Hospitality, and it pled that it was granted summary judgment. Taking those allegations as well-pleaded does not entitle it to a claim for contribution under Arkansas law. You're saying they pleaded themselves out of the case, even apart from issue preclusion. Correct. Because they alleged in their own complaint that there was no duty.  And their allegations on contribution, their allegation is that because MJ Kelly and Tony Frazier were alleged to have liability, that were joint tort feasors. But respectfully, that's not the standard under Arkansas law. It's not alleged to have joint or several liability. It's persons who may have joint or several liability. So it goes back to they're a person who can't have joint and several liability, and that allegation is a conclusory legal allegation. It's not a factual allegation. It's a legal conclusion couched as a factual conclusion. The district court did not have to accept the conclusion that MJ Kelly pled that it was a joint tort feasor with Tony Frazier, simply because they were alleged at one point to have joint or several liability for the same injury. Because that's not a factual allegation. And then separately, the well-established doctrine of judicial estoppel also bars MJ Kelly from taking contradictory positions in this matter. Under Arkansas law, the doctrine of judicial estoppel prevents a party from taking a contradictory position to one it has previously asserted when the positions are clearly inconsistent with one another. In an earlier case or the same case, they took the inconsistent position to manipulate the judicial process to gain an unfair advantage. They were successful. They successfully maintained the position in the first or the same action, and the integrity of the judicial process would be injured by the party switching positions. MJ Kelly vigorously litigated whether or not it owed a duty. It could be a tort feasor with Heritage Hospitality. It vigorously litigated that it had no liability under Arkansas law, and it won. It also vigorously litigated that it could not be a joint tort feasor under Arkansas law under the same statute that it sues under. It has now taken the exact opposite position, and the only reason it has done so is because it chose to voluntarily contribute to a settlement despite having an order saying you don't owe a duty. That is solely to gain an advantage in this litigation, and it would not be consistent with our system to allow a party to do that. It would potentially create inconsistent results. You could have an order. If this case were to proceed to litigation and MJ Kelly somehow prevailed and got a jury to say that we are a joint tort feasor with MJ Kelly, you would have completely inconsistent positions or inconsistent results in the state court litigation and this litigation. MJ Kelly makes much to do about the fact that it faced a potential appeal. Well, that's a potential. No one knows whether or not that case would be appealed or not, and the possibility of an appeal doesn't somehow make this situation any different than any other litigation where there's multi-parties. There's multiple defendants in a case. And lastly, MJ Kelly admits part of the reason it chose to voluntarily contribute to the settlement agreement. It's in its complaint. It's in its brief in the lower court and before this court that it faced an indemnity claim from Pinstar Insurance Company. There's a real question about whether these are tort damages that MJ Kelly paid at all. More realistically, these are contract damages vis-à-vis Pinstar. It chose to participate. They raised these issues. More realistically, these are damages that it chose to pay instead of having Pinstar pay the damages and then reimburse Pinstar. They just short-circuited that whole process. So again, this is fundamental issues. You don't get to re-litigate issues just because it now favors you to do so. That undermines our system. Once an issue is litigated, it's litigated. MJ Kelly has a summary judgment order in state court saying you are not liable in torts to heritage hospitality. It got dismissed from the state court action on those grounds. It defended a contribution action in the state court on those grounds. It now seeks to impose contribution damages on Tony Frazier despite the prior orders and despite his prior positions, which are completely inconsistent with one another. Both issue preclusion and judicial estoppel prevent them from doing so. Disregarding both of those issues, MJ Kelly pled itself out of a case of contribution when it pled that it didn't owe a duty to heritage hospitality and it was granted summary judgment. Those allegations separately defeat its case. If the court has nothing further. Very well. Thank you for your argument. Thank you. We'll hear rebuttal. Mr. Martz. Yes, sir. I want to start with that word potential that my friend on the other side emphasized there. The statute deals with potentialities. The Uniform Contribution Among Tort Feasers Act establishes a joint tort feaser is someone who may be jointly or severally liable in tort. May be. Not is. Not certain to be. May be. And that's what the complaint alleged. The complaint did not allege that MJ Kelly owed no duty. The complaint described the orders that were entered in the state court. It said what the basis for that order was and it explained why MJ Kelly believed it still faced liability. Why it may be jointly or severally liable. That's alleged in the complaint and that is sufficient. What about your complaint where you allege in this case that there was no duty? That's not alleged in the complaint, Your Honor. That is a characterization of the complaint. But what the complaint says, paragraph 23 of the complaint, this is at page 9 of the appendix. After the claims of both Heritage and Frazier against MJ Kelly in the Heritage lawsuit were dismissed by an order granting summary judgment for MJ Kelly based on a lack of any duty owed to Heritage, Heritage appealed the ruling in favor of MJ Kelly to the Arkansas Court of Appeals. That appeal was dismissed without prejudice for lack of a final judgment. The paragraphs that follow then explain why MJ Kelly believed that despite that order, it still faced liability. That is that it was a party who may have jointly or severally liability to Heritage. But what about the allegation in paragraph 8, MJ Kelly acted exclusively as an agent for Penn Star and had no duty to Heritage? I think that under the context of that sentence is that it was acting as an agent for Penn Star and had no contractual duty. I think that could have been pleaded better, but I don't believe that that is a statement of whether there was tort duty. That is a statement describing the party's contractual relationships and that there is no contractual duty between the parties. But that doesn't mean that there wasn't tort duty. And again, that's explained. I know I'm out of time, but may I point out one more thing? I just want to say that… You want permission to point out one more thing? Yes, sir. Very briefly. I just want to point out that judicial estoppel was not argued in Frazier's brief on appeal, but it was argued here today. Thank you. Thank you. Thank you for your argument. Thank you to both counsel. The case is submitted, and the court will file a decision in due course. Thank you.